Nicholson, C. J.,
delivered the opinion of the court.
Plaintiffs, as surviving partners of Rice, Wilson & Isbell, claim title to a sorrel mare and colt repleyied by them from Catharine Crow. They had been the owners of the mare, and agreed to sell her to Nelson Philips, a colored man. At the same time they agreed to sell three other horses to three other colored men. But none of the contracts were completed until a few days afterwards, when all the parties met at Athens, when Rice, one of the plaintiffs, acting, as we infer, for the firm, made an arrangement by which the title to the several horses was vested in James M. Charles, to the end that he might ultimately receive the purchase money for the horses for plaintiffs, and make titles to the several purchasers. Accordingly, at the instance of Rice, Charles drew up a receipt in the nature of an agreement, whereby the several purchasers agree that they have received from the said Charles the several horses as respectively contracted for, the price of each being specified, and agreeing further that they were equally and jointly bound for the forthcoming of the horses, and the prices specified to be paid to said Charles as soon as their money, or that of either of them, should *30 be collected from the government as soldiers for service's as privates, and when the whole amount for the four horses ($654) should be so paid, the said Charles was to make each man a good title to his horse — but the title of each and all the horses was to remain in said Charles until the last dollar was paid.
This receipt and agreement was signed alone by the four colored men, and they severally took their respective horses. Two of the colored men received their money for their services as soldiers, which was paid over by Charles to plaintiffs, amounting to $315, this being the price of the two horses purchased by them. The other two have received nothing from the government, and hence they have paid nothing on their horses. Nelson Phillips sold his horse to the defendant, Catharine Crow, and the plaintiffs, Pice and Isbel, have brought replevin against her and got possession of the horse.
Upon the trial in the Circuit Court the jury found a verdict for defendant, and .plaintiffs have appealed in error.
The Circuit Judge charged the jury, that the written contract contains a joint undertaking by the signers for the forthcoming of the several horses or animals or the payment of the entire price agreed to be paid for them, and if they should find that a portion of the purchase money was paid to the plaintiffs, then the suit could not be maintained unless the proof should show that before the plaintiffs commenced their suit they had returned or offered to return the amount paid — that is to say, they must, before they are allowed *31 to regain by this action the property in controversy, put the parties in the condition they were in before they made their purchase.
It is insisted for plaintiffs that this charge is erroneous, and we think the objection is well taken. It is true that by the terms of the agreement the signers thereof became equally and jointly bound for the forthcoming of the horses if' the stipulated price of the entire stock should not be paid. But this was a stipulation for the benefit of the plaintiffs, and they might well waive it and sue for any one of the horses that might not be paid for according to the contract. If Phillips violated his contract in failing to pay according to the agreement, the plaintiffs had the right to require the forthcoming of the (horse purchased by him, and if they had chosen they could have looked to all the joint signers of the contract for the forthcoming of Phillips’ horse. They have elected to waive this right, and have proceeded to assert their title by the action of replevin.
This they had the right to do, provided they had such title as they could enforce at law.
This brings us to another portion of the charge to which the defendant objects. The Circuit Judge charged the jury that if they found from the written contract, taken in connection with the other proof, that plaintiffs were the owners of the horses, then they had such title as would authorize them to maintain the suit. In this we think there was error. The agreement was written by Charles at the request of Rice, and by its terms the legal title to the horses *32 is declared to be in Charles, and the horses are expressly received by the purchasers from Charles. After the execution of the agreement, at the request and in the presence of Rice, acting for his firm, the legal title was in Charles, and the equitable title in the plaintiffs. It is clear that the plaintiffs are estopped by procuring the agreement to be written and signed, from asserting the legal title in opposition to the terms of the agreement. The rights of the plaintiffs, as well as of the purchasers, must be determined by the written agreement, and it was error to leave the question as to the title to be determined by the jury, by reference to other proof than that contained in the agreement. It follows that as plaintiffs had only an equitable title to the horse they could not maintain the action of replevin. If the action could be maintained at all at law, it must be in the name of Charles, who has the legal title. By the terms of the agreement the price of the horse was to be paid out of a specific fund when the same should be collected. No definite time of payment is fixed, and it is far from being clear whether Charles could maintain an action at law in view of the special terms of the agreement. But on this point we give no opinion. It is sufficient for the present case that although the Circuit Judge erred in his charge against the plaintiffs, yet he also erred against the defendant, and as the verdict is correct as we have held the law, the judgment will be affirmed.